RHONDA K WOOD, Associate Justice | T After remand from this court, the circuit court again denied a natural parent’s petition to terminate a guardianship over her child. We hold that the circuit court applied a legal standard that failed to safeguard the natural parent’s fundamental right with respect to the care, custody, and control of her child. We therefore reverse and remand for the circuit court to enter an order returning the child to her mother’s custody. I. Procedural History Tamera Troesken gave birth to S.H. in 2005. S.H.’s biological father is Scott Her-rington. In 2008, Tamera consented to a permanent guardianship over S.H. in favor of Scott’s parents, Larry and Donna Her-rington. When the hearing took place, Tamera did not have counsel and was living with the Herringtons, who had retained counsel for the guardianship proceedings. A week or two following that hearing, the Herringtons forced Tamera to leave their home without allowing her to take S.H. Sixteen months later (June |¾2010), Tamera withdrew her consent and filed a petition to terminate the guardianship. The Herringtons objected to termination, and the proceedings have been ongoing since. The circuit court first held a hearing on Tamera’s petition in April 2011. We recounted the testimony from that hearing in our first opinion. See In re Guardianship of S.H., 2012 Ark. 245, 409 S.W.3d 307 (In re Guardianship of S.H. (I)). There, Tamera testified that she had consented to the guardianship in 2008 because her life was unstable, but was now, at the time of the hearing, ready to regain custody of S.H. Following the hearing, the circuit court ruled that Tamera failed to meet her burden that the guardianship was no longer necessary and her burden that termi-nátion of the guardianship was in S.H.’s best interest. As a result, the court denied Tamera’s petition to terminate the guardianship. Tamera appealed to our court. We ruled that the guardianship statute, as applied to Tamera, was an unconstitutional violation of her fundamental liberty interest with respect to the care, custody, and control of her child. In re Guardianship of S.H. (I), 2012 Ark. 245, at 15, 409 S.W.3d at 316. We reversed and remanded the case to the circuit court to consider the case in light of the following holding: A natural parent who has not been deemed unfit is entitled to the presumption that he or she is acting in the child’s best interest, even after consenting to a guardianship. Therefore, when a natural parent, who has not been deemed unfit and who has consented to a guardianship, files a petition to terminate that guardianship, that parent must put forth evidence that the guardianship is no longer necessary. Once the court is satisfied that the conditions necessitating the guardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child’s best interest. Id. |SII. Hearing on Remand After remand, the circuit court held three separate hearings over the space of ten months. The first hearing took place in October 2012. There, Tamera testified that she still lived in Minnesota and had moved in with her mother. The two of them shared a four-bedroom house, which her mother owned; her mother lived upstairs, and Tamera lived downstairs. Since the first hearing in 2011, Tamera had given birth to another child. Tamera was not married to the child’s father. Rather, she testified that she had been in a nearly nine-month relationship with another man, Jeff Dawson. Tamera admitted that she often spent the night with Dawson, who had a ten-year-old daughter, and that S.H. had accompanied her on at least one of her overnight visits to Dawson’s house. Tamera further testified that she had quit her job as a nursing aide and started taking online nursing classes to be a medical assistant in order to eventually obtain a better job and this allowed her to spend time at home with her new baby. She also earned income babysitting her nephew. She testified that she does not use drugs or alcohol and had exercised all her visitation with S.H. since the last hearing. Other character witnesses testified on Tamera’s behalf, including Jeff Dawson, Tamera’s sister, and Tamera’s uncle. All three testified that Tamera was a capable parent. Donna Herrington testified as well. She said that her son, Scott, was currently at a drug-rehabilitation program in Iowa. Donna thought Tamera neglected S.H. by not being more involved when S.H. was in Arkansas, even though Donna had no evidence that Tamera neglected S.H. during S.H.’s visits to Minnesota. After considering the evidence, the court initially ruled that Tamera “has gone forward with evidence that the [4guardianship is no longer necessary.” The court then allowed the Herringtons to present evidence rebutting the presumption that terminating the guardianship was in S.H.’s best interest. First, some of S.H.’s teachers testified that S.H. was a good student and appeared well-adjusted in their classrooms. Then Larry Herrington testified that S.H. takes dancing classes, that he and his wife provide S.H. with school supplies, attend parent-teacher conferences, and provide S.H. with all necessary material needs. Once Larry’s testimony ended, the court recessed and continued the case until June 2013. The only person to testify at the second hearing in June 2013 was a social worker, Lesa Doan.[1] Doan testified that she started treating S.H. in 2010 and had met with S.H. every two weeks. Doan had also incorporated Taniera into her sessions with S.H. pursuant to the circuit court’s order. Between April 2011 and September 2012, Doan met with Taniera via Skype on five occasions, but she also testified that Taniera missed six other scheduled Skype sessions. Doan testified that Taniera would not notify her if she was going to miss one of the sessions. Doan’s ultimate opinion was that S.H. should continue to stay with the Herringtons; if S.H. lived with her mother, Doan opined, it would “adversely affect” S.H. The third hearing on remand took place in August 2013. The only person to testify was the attorney ad litem, who also issued a report. Like the social worker, he recommended that the guardianship remain in place and that S.H. continue to stay with her grandparents. IfiAfter the hearing the court issued a letter opinion. Contrary to its earlier ruling when Taniera had rested her case, the court held that Taniera had not put forth sufficient evidence to show that the guardianship was no longer necessary. Even so, the court made an alternative ruling that the Herringtons had rebutted the presumption that termination of the guardianship was in S.H.’s best interest. III. Standard of Review We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. Graham v. Matheny, 2009 Ark. 481, 346 S.W.3d 273. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. Id. When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses. Id. IV. Burden Going Forward When we decided this appeal the first time, we held that Tamera’s initial burden was to “put forth evidence that the guardianship is no longer necessary.” In re Guardianship of S.H. (I), 2012 Ark. 245, at 15, 409 S.W.3d at 316 We did not specify whether this was a “burden of going forward or ... a burden of proof.” Id. at 22, 409 S.W.3d at 320 (Goodson, J., dissenting). We take the opportunity now to clarify the burden. A fit parent who consented to a guardianship puts forth sufficient evidence, and meets the burden going forward, by revoking consent and informing the court that the conditions necessitating the guardianship no longer exist. This is because a fit parent is presumed to act in his or her child’s best interest. Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); Linder v. Linder, 348 Ark. 322, 72 S.W.3d 841 (2002). Requiring any more from a fit parent would violate that parent’s constitutional right to make decisions concerning the care, custody, and control of that parent’s children. Thus, a fit parent is presumed to act in the child’s best interest when consenting to the guardianship and, later, when terminating the guardianship. The circuit court erred when ruling on Tamera’s initial burden going forward. Again, the court initially ruled that Tamera had “gone forward with evidence that the guardianship is no longer necessary.” The court then allowed the Herringtons to rebut the presumption that termination of the guardianship was in S.H.’s best interest. However, the court’s letter opinion stated the opposite by finding “that Tamera did not put forth evidence sufficient to satisfy the court that the conditions necessitating the guardianship have been removed.” So the court allowed Tamera to proceed through the remainder of the October 2012 hearing and two more subsequent hearings without alerting her that the court had changed its mind about whether she had truly met her burden. While this reverse finding raises concerns, we focus instead on the court’s written order, which clearly misapplies the law. “To the extent that the court’s bench ruling conflicts with its written order, if at all, the written order controls over the court’s oral ruling.” Stills v. Stills, 2010 Ark. 132, at 12, 361 S.W.3d 823, 830. Specifically, the court’s order stated that “after comparing the circumstances which existed at the time the guardianship was granted and the circumstances which exist now, the court concludes that there has not been any material change.” This ruling was clearly erroneous: by bringing a petition to terminate a guardianship to which she had consented, |7Tamera did not have the burden to show a material change in circumstances. “A change-of-custody analysis using the material-change-of-circumstances standard should not be done in termination-of-guardianship cases.” Graham v. Matheny, 2009 Ark. 481, at 15, 346 S.W.3d at 281. The court erred by converting a termination-of-guardianship case into a change-of-custody case, which is the incorrect analysis. In a termination-of-guardianship case, a parent’s only burden is to put forth evidence that the guardianship is no longer necessary. Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2012); In re Guardianship of S.H. (I), supra. Therefore, in this case, the circuit court erred when it ruled that Tamera failed to meet her burden going forward. This “burden” is neither an affirmative burden of proof nor a burden to prove a “material” change. Here, Tamera consented to the guardianship in August 2008. There has never been a finding that she was unfit. (Indeed, the psychologist testified at the April 2011 hearing that Tamera was a fit parent.) When’ Tamera withdrew her consent in her June 2010 petition to terminate the guardianship and testified that the conditions necessitating the guardianship no longer existed, she met her burden going forward that the guardianship was no longer necessary. V. Best Interest The circuit court made an alternative ruling: even if Tamera met her initial burden, the Herringtons rebutted the presumption that terminating the guardianship was in S.H.’s best interest. This ruling was clearly erroneous. The circuit court failed to credit Tamera’s fundamental right to care for her daughter and gave no weight to her rights as the natural parent. We explained in our last opinion that the court must give Tamera’s status as a |sparent some consideration. In re Guardianship of S.H., 2012 Ark. 245, at 14, 409 S.W.3d at 316. To appropriately protect Tamera’s rights as a fit, natural parent, the circuit court should have held the guardians to a cleár-and-convinciiig standard of proof. “On de novo review of a fully developed record, when we can plainly see whether the equities lie, we may enter the order that the circuit court should have entered.” Ingle v. Ark. Dep’t of Human Servs., 2014 Ark. 53, at 9, 431 S.W.3d 303, 308. This is a probate matter where a fit mother consented to guardianship and has been attempting to regain custody since June of 2010. While we agree with the dissent’s position — that when possible remand is the preferred option — this case involves a young child who has been held in limbo by our court system for the last five years. There is a reason this court conducts a de novo review of the record: there are cases, like this one, where it becomes necessary for us to consider the evidence and apply the appropriate standard. We do so in this case and hold that the Herringtons failed to rebut the presumption, by clear and convincing evidence, that termination of the guardianship was in S.H.’s best interest. It should be noted at the outset that our previous opinion did not state whether the Herringtons’ burden was by a preponderance of the evidence or clear and convincing evidence. We thus failed to provide the circuit court with direction on this issue. But we cannot compound that problem by refusing to set it out clearly now. Different states have taken different approaches to the burden the guardian carries when a fit parent brings a petition to terminate the guardianship. Compare In re D.I.S., 249 P.3d 775, 786 (Colo. 2011) (preponderance of the evidence) with In re Guardianship of Reena D., 163 N.H. 107, 35 A.3d 509, 515 (N.H. 2011) (clear and convincing evidence). And in another context, Arkansas | Requires clear and convincing proof of a child’s best interest in a termination-of-parental-rights case. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013). The Nebraska Supreme Court has explained the purpose of consensual guard-ianships and why a clear-and-convincing standard of proof is necessary to protect a natural parent’s constitutional rights: [Guardianships are intended to encourage parents experiencing difficulties to temporarily turn over the custody and care of their children — safe in the knowledge that they will be able to regain custody in the future. This policy would be frustrated if guardianships were permanent or resulted in the automatic termination of parental rights, because parents would be less likely to voluntarily petition for a guardian to be appointed to care for their minor children. Therefore, children would unnecessarily be placed in jeopardy in many circumstances. [[Image here]] Thus, we hold that in guardianship termination proceedings involving a biological or adoptive parent, the parental preference principle serves to establish a rebuttable presumption that the best interests of the child are served by reuniting the minor child with his or her parent. In other words, an individual who opposes the termination of a guardianship bears the burden of proving by clear and convincing evidence that the biological or adoptive parent either is unfit or has forfeited his or her right to custody. Absent such proof, the constitutional dimensions of the relationship between parent and child require termination of the guardianship and reunification with the parent. In re Guardianship of D.J., 682 N.W.2d 238, 246 (Neb. 2004); see also In re Guardianship of Reena D., 35 A.3d at 515 (holding that a clear-and-convincing standard of proof applies to the guardian’s burden in a proceeding to terminate a guardianship established by consent); Boddie v. Daniels, 288 Ga. 143, 702 S.E.2d 172, 175 (2010) (requiring guardian to prove by clear and convincing evidence that terminating the guardianship would harm the child); Tourison v. Pepper, 51 A.3d 470, 474 (Del. 2012) (same). |1flWe agree with those states that require the guardians to meet a clear-and-convincing burden of proof. To hold otherwise would place the natural parents and guardians on an equal plane, making a termination-of-guardianship case just like a court’s initial custody decision in a divorce case or in a child-custody modification. In custody cases, the court weighs best-interest against placing the child with two biological parents.[2] Ark. Code Ann. § 9-13-101(a)(l)(A)(i) (Supp. 2013) (“In an action for divorce, the award of custody of a child of the marriage shall be made without regard to the sex of a parent but solely in accordance with the welfare and best interest of the child.”). But in guardianships, the decision is generally between a natural parent and a non-natural parent. See, e.g., Graham, supra (biological mother vs. paternal grandmother); Smith v. Thomas, 373 Ark. 427, 284 S.W.3d 476 (2008) (biological father vs. maternal grandparents); Crenshaw v. Crenshaw, 2012 Ark. App. 695, 2012 WL 6200275 (biological mother vs. paternal grandparents). Fit, natural parents who consent to a guardianship need additional protection in seeking to terminate the guardianship. A preponderance-of-the-evidence standard would fail to safeguard a natural parent’s fundamental right to parent his or her children. The circuit court cannot simply weigh best-interest equally between the natural parent and the non-natural parent. Some additional weight must be given to the natural parent’s fundamental rights, which a clear and convincing standard can provide. In this case, the court made only the following findings as to how the Herring-tons rebutted the presumption that termination of the guardianship was in S.H.’s best interest: |uSince their appointment as guardians, the Herringtons have provided, and continue to provide, a stable, loving and supportive home, providing for both her physical and emotional needs. Although the Herringtons continue to maintain counseling for S.H., all things considered, the evidence indicates that, S.H. is a well-adjusted child. She is in the third grade where she is an exceptional student. She is also involved in extracurricular activities, and has a number of friends with whom she spends time. The Herringtons and S.H. have developed a strong bond. The above fails to clearly and convincingly rebut the presumption that terminating the guardianship was in S.H.’s best interest. By the time the court issued this letter opinion, S.H. had been in the Her-ringtons’ custody for nearly five years (October 2008 — September 2013). No one disputed that the Herringtons were loving grandparents and took great care of S.H., and, one would expect, a child will have bonded with loving grandparents over a five-year period. But this is not a fact or piece of evidence that will, in itself, rise to clear and convincing evidence that the child should remain with the guardians. What’s more, only sixteen months after the guardianship was entered, Tamera filed a petition to terminate and has spent the subsequent five years trying to regain custody of her daughter. Many of the delays in this case have resulted result not from Tamera’s indifference to her child but from the natural unfolding of the legal process.[3] The longer the case goes on, the stronger the bond between the Herring-tons and S.H. will be, and Tamera has not been the cause of extending the case five years. Nothing Tamera can do will rebut this or surmount this. So to hold that the bond between S.H. and her guardians — in itself — trumps Tamera’s right to care for her child would effectively annihilate her fundamental right to be a parent. We have acknowledged that “the stability of a child’s environment and how well the child is functioning become critical factors, in | ^addition to other factors, in deciding the child’s best interest.” Graham, 2009 Ark. 481, at 15, 846 S.W.3d at 281. Obviously S.H.’s stability and proper functioning are still critical factors; however, they are factors that must contend with Tamera’s fundamental right to make decisions regarding S.H.’s custody. This does not mean that Tamera’s actions since she consented to the guardianship are irrelevant. But the evidence generally showed that Tamera, while not an ideal parent, remained a fit parent, which is all that matters for constitutional purposes. No evidence was shown that Tamera could not also provide the love and affection that the grandparents did. Even the social worker testified as to the affection between Tamera and S.H. Moreover, Tamera was going to nursing school, had family support in Minnesota, and has spent nearly five years attempting to regain custody of her daughter. Although the court was silent about the weight it gave the testimony from the social worker and the ad litem, both recommended that the guardianship remain in place. Tamera argues that the ad litem’s testimony should be discounted because he failed to comply with an Administrative Order.[4] She further argues that the circuit court should have excluded, under Daubert, parts of Doan’s testimony that were based on art therapy and play therapy- We acknowledge these concerns, but they play no part in our decision for two reasons. First, the court did not explicitly base its best-interest decision on Doan’s therapy interpretations or on the ad litem’s recommendation. So even if there is a Daubert violation or a failure to comply with an administrative order, no prejudice exists. “On 11sappeal, we will not reverse a trial court’s ruling on the admission of evidence absent an abuse of that discretion nor will we reverse absent a showing of prejudice.” Aka v. Jefferson Hosp. Ass’n, Inc., 344 Ark. 627, 645, 42 S.W.3d 508, 521 (2001). Second, these two arguments really go to the weight and credibility of the testimony from the ad litem and social worker. These matters rest with the circuit court. And so, on appeal, we follow the circuit court’s lead and leave undisturbed its decision to give little weight to these testimonies. The court’s letter opinion reflected that the court based its best-interest decision solely on the bond S.H. had formed with the Herringtons, which,, as stated above, cannot rebut the presumption by clear and convincing evidence that the guardianship should be terminated. Therefore, we reverse the court’s order and remand for the circuit court to enter an order returning S.H. to Tamera’s custody and terminating the Herringtons’ guardianship. Tamera’s second point on appeal is that the circuit court erred by requiring her to continue to participate in S.H.’s counseling with Lesa Doan. This issue is now moot because we are reversing the court’s order, and S.H. will be returned to her mother’s custody. VI. Law of the Case The law of the case doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. Clinical Study Ctrs., Inc. v. Boellner, 2012 Ark. 266, 411 S.W.3d 695. The doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided in a prior appeal. Id. The doctrine requires us to 114adhere to our decision on the first appeal even though we might think it to have been wrong. Potter v. Easley, 288 Ark. 188, 703 S.W.2d 442 (1986). Thus, under law of the case, we must adhere to the two-step, burden-shifting procedure from In re Guardianship of S.H. (I), which we summarize as follows. A fit parent who consented to a guardianship puts forth sufficient evidence to terminate ' the guardianship, and meets the burden going forward, by revoking consent and informing the court that the conditions necessitating the guardianship no longer exist. If the guardians desire the guardianship to stay in place, they must rebut the presumption, by clear and convincing evidence, that termination of the guardianship is in the child’s best interest. The circuit court must always consider the natural parent’s right to parent his or her child in that decision. This two-step process has been derived from In re Guardianship of S.H. (I) and Graham. We acknowledge it is not entirely consistent with the guardianship statutes, which provide that a court may terminate a guardianship “if, for any other reason, the guardianship is no longer necessary or for the best interest of the ward.” Ark. Code Ann. § 28 — 65—401(b)(3). This statute is disjunctive, which ostensibly means a guardianship can be terminated for either of the above reasons. However, in Graham, this court held that even if the guardianship is no longer necessary, “[w]hat is in the best interest of the child must always be examined under the first standard to determine whether the guardianship should be terminated.” 2009 Ark. 481, at 14, 346 S.W.3d at 281. So the Graham court converted a disjunctive statute into a conjunctive statute. See id. at 19, 346 S.W.3d at 285 (Hannah, C.J., dissenting) (“[Njeither this court nor the court of appeals has applied the proper | ^standard on termination of a guardianship set out in the statute.”). The constraints of the law of the case prevent this court from following the cardinal rule of statutory interpretation, which is “to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language.” McMillan v. Live Nation Entm’t, Inc., 2012 Ark. 166, at 4, 401 S.W.3d 473, 476. Reversed and remanded. Baker and Hart, JJ., concur. Hannah, C.J., and Danielson, J., dissent. . Doan had also testified during the April 2011 hearing. . Some exceptions obviously apply for purposes of visitation. Ark. Code Ann. § 9 — 13— 103 (Repl. 2009) (grandparent visitation); Ark. Code Ann. § 9-13-102 (sibling visitation); Robinson v. Ford-Robinson, 362 Ark. 232, 208 S.W.3d 140 (2005) (stepparent visitation). . The April 2011 hearing was delayed twice upon the Herringtons’ request, and there was a further delay because the ad litem failed to appear at the hearings. . "An attorney ad litem shall appear at all hearings to represent the best interest of the child.” Ark. Sup. Ct. Admin. Order No. 15.1 (5)(c) (2014).