

Cite as 2015 Ark. App. 639

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-14-937

| | |
|---|---|
| ROBYN HUSKEY AND JANICE MARIE<br><br>APPELLANTS<br><br>V.<br><br>BILLY HUSKEY<br><br>APPELLEE | **OPINION DELIVERED** NOVEMBER 12, 2015<br><br>APPEAL FROM THE DREW COUNTY CIRCUIT COURT<br>[NO. JV-2014-129-5]<br><br>HONORABLE TERESA FRENCH, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellants Robyn Huskey, mother of A.H. (born April 7, 2010), and Janice Marie, A.H.'s maternal grandmother, appeal the Drew County Circuit Court's order of guardianship filed August 12, 2014, the corresponding "Family in Need of Services" (FINS) order filed August 19, 2014, and the circuit court's order denying their motion to recuse and change venue. Appellants set forth four points on appeal, claiming that (1) appellant Robyn Huskey's constitutional rights were violated because her child was removed from her without a finding that she was unfit; (2) when appellant Robyn Huskey filed her motion to terminate the guardianship on March 12, 2013, she was entitled to custody because she had not been declared unfit, citing *In re Guardianship of S.H.*, 2015 Ark. 75, 455 S.W.3d 313; (3) the trial court erred in denying their motion to recuse; and (4) the guardianship order "is void because of case law, it was based on a void order without due process, and appellee Billy Huskey, [paternal grandfather,] is an unfit guardian." We affirm.

SLIP OPINION

I. *Statement of Facts*

Even though A.H. was born in 2010, the record indicates that the parties were involved in domestic litigation in Crittenden County beginning in 2009, when appellant Janice Marie obtained an order granting her custody of appellant Robyn Huskey's three children from a relationship previous to Jeremy Huskey, A.H.'s father.[1]  Robyn received reasonable visitation with those three children outside the presence of Jeremy.  That case was transferred to the Drew County Circuit Court on November 9, 2009.  On September 12, 2011, an agreed order was filed appointing Janice as guardian of the three children.

Also in the Drew County Circuit Court on May 14, 2010, Jeremy filed a complaint for divorce against Robyn, and he petitioned for custody of A.H.  Robyn answered and counterclaimed for custody and supervised visitation for Jeremy.  A temporary order was filed on July 26, 2010, awarding joint legal and physical custody of A.H. to both parents.  On July 30, 2010, Jeremy filed an emergency motion for sole custody alleging that Robyn had been ticketed for hazardous driving with A.H. in the car; that she had offered him extended visitation in exchange for money because she claimed that she had no place to live and had no money for gas or food; that all of Robyn's belongings were in her vehicle; and that Robyn's mother had called him to say that she had reported Robyn missing.  He alleged that, when he gave her money to leave, Robyn became irate, hit him with her phone, and tried to jump out of the truck with A.H.  He claimed that the police were called.  However, on

---

[1]Jeremy Huskey is not a party to this appeal.

2

October 25, 2010, an agreed order was filed wherein the ex parte temporary order of protection and the divorce action were dismissed.

Another divorce action was filed in the Drew County Circuit Court on December 10, 2010, wherein Robyn sought a divorce and custody of A.H., and she alleged that Jeremy was a registered sex offender and was physically violent. An emergency ex parte order was filed on the same date awarding custody of A.H. to Robyn. Jeremy answered Robyn's complaint and counterclaimed for divorce, claiming that Robyn was unfit to have custody and asking that he be granted custody, with Robyn having supervised visitation. He claimed that Robyn had a problem with alcohol and severe psychological and emotional disorders. A temporary order was filed on February 2, 2011, awarding joint custody, with the parties having an alternating-weekend and weekday schedule of physical custody. The parties were ordered to attend individual counseling on a regular basis. The order also provided that, if the parties chose to reconcile without written confirmation from both counselors that the parties had adequately addressed their personal and marital issues, custody of A.H. would be placed with the Arkansas Department of Human Services (DHS).

On February 17, 2011, Jeremy filed a motion for emergency change of custody and motion for contempt, alleging that Robyn had kept A.H. from him and claiming that A.H. was sick. The attorney ad litem filed a motion for emergency hearing and change of custody on March 1, 2011, claiming that both parties had been arrested on February 25, 2011, mutually alleging that domestic violence had occurred in A.H.'s presence. On March 2, 2011, an order was filed that modified the temporary agreed order by awarding custody to

Kathy Johnson, A.H.'s , paternal aunt, pending further orders.  Also pending further order, the parents were granted no contact with Kathy Johnson or A.H.

On April 22, 2011, Kathy Johnson and Billy Huskey, paternal grandfather of A.H. and brother of Kathy Johnson, co-petitioned for joint custody of A.H. in the pending divorce case.  On May 18, 2011, Kathy and Billy filed a petition for Billy to be appointed guardian of the person and estate of A.H. in a guardianship case filed in the Drew County Circuit Court, Probate Division.  Robyn and Jeremy filed their consent to the guardianship on May 24, 2011.

On September 9, 2011, the guardianship petition was transferred to the juvenile division of the Drew County Circuit Court.  A FINS order was filed on September 26, 2011, setting a review hearing for November 3, 2011.  A FINS order filed November 3, 2011, reflects that the case was reviewed, and another review hearing was set for January 26, 2012.

On January 13, 2012, Billy filed a petition for custody, claiming that he needed an order granting him custody for the purpose of satisfying his medical–insurance carrier.  He claimed that the child would remain in Kathy's care and custody, but stated that the child currently spent time "back and forth" with him and Kathy.  An order granting Billy temporary custody of A.H. was filed on January 18, 2012.  A FINS order filed February 16, 2012, reflects that a review hearing was held and that Billy had received custody for insurance purposes and that Kathy continued to have physical custody.  An order of joint custody was filed on March 9, 2012, awarding custody to both Kathy and Billy.

On March 12, 2012, Robyn filed a petition to "set aside guardianship" and for permanent custody, claiming that she had undergone counseling and was in a stable environment. Alternatively, she asked that Janice be appointed guardian of A.H. Kathy and Billy responded, claiming that neither Robyn nor Janice was fit for guardianship or custody, and stating that custody should remain with them.

An order was filed on September 21, 2012, wherein the circuit court found that Kathy and her husband, Jere Johnson, had been primarily responsible for the day-to-day care of A.H. since February 25, 2011. The order states, "[Kathy] was appointed temporary guardian of the person and has nurtured and provided stability for the minor and stands ready, willing and able to continue said guardianship." Finding that the relationship with Kathy was in the child's best interest, Jere and Kathy, husband and wife, were appointed coguardians of A.H.'s person. The court prohibited Robyn and Jeremy from having any face-to-face contact with A.H. "until such time as each undergoes intensive therapy or counseling with a licensed therapist/counselor for their issues." The trial court reasoned that "both parents" had exhibited "willful and obvious" disregard for past court orders and that they "continued to engage in conduct that [was] detrimental to the best interest of the child." The parents were granted telephone visitation. The parties were warned that if a violation occurred, A.H. would be placed in the custody of DHS. Janice and A.H.'s siblings were granted unsupervised day visits when they were in Drew County, as long as Robyn was not present. Billy was appointed guardian of A.H.'s estate, and his visitation was to be supervised by either Jere or

SLIP OPINION

Kathy. Finally, the trial court ordered that if the coguardians allowed any unauthorized visitation with the child, A.H. would be placed in DHS custody.

A FINS order reflecting that the case had been reviewed and setting a review hearing for February 28, 2013, was filed on December 27, 2012. Another FINS order reflecting that the case had been reviewed and would be reviewed again on June 11, 2013, was filed on May 28, 2013.

Robyn and Jeremy were divorced in the Drew County Circuit Court on June 11, 2013. The decree was signed by both Robyn and Jeremy, and it provided, "The parties have one minor child, A.H., whose custody is being determined under the Jurisdiction of Honorable Teresa French's (juvenile division) court." On July 19, 2013, by agreement among Kathy, Billy, and Margie Savage, paternal grandmother of A.H., an order of custody and grandparent visitation was filed, granting Kathy legal and physical custody of A.H., and not allowing Jeremy or Robyn to have contact. Billy was granted unlimited, unsupervised visitation. The order also set forth visitation for Margie Savage.

At least four FINS orders were filed reflecting review hearings and continuances between September 18, 2013, and February 2014. The FINS order filed on February 11, 2014, reflects as follows:

> The Court on January 28, 2014, close [sic] this case. The Court finds that the orders of custody shall remain as previously ordered, visitation with Mr. Billy Huskey shall remain as previously ordered, and the NO CONTACT order with the parents shall remain in full force and effect.

On May 1, 2014, Billy filed a petition for guardianship of the person and estate of A.H., alleging that Kathy had been awarded custody in the past, and that he had been granted

unlimited, unsupervised visitation. He claimed that, as a practical matter, A.H. spent all of her time with him, and he attended to her every need. Kathy and Jeremy filed their consents on May 16, 2014.

Robyn filed a contempt motion on June 2, 2014, alleging that A.H. was in immediate danger and that Kathy and Jere had abandoned A.H. to Billy. She also claimed that Margie Savage's unsupervised visitation left A.H. vulnerable to Jeremy. In her June 2, 2014 response to Billy's petition for guardianship, Robyn alleged that the order granting Billy supervised visitation controlled. She claimed that Billy allowed frequent contact between A.H. and Jeremy, and she made protracted allegations that Jeremy had abused her in the child's prescence.

On Billy's motion, the guardianship proceeding, case no. PR–2014–30–2, was transferred on June 11, 2014, to the juvenile division of circuit court, case no. JV–2011–198–5, which had initial jurisdiction of A.H.'s custody. Over Robyn and Janice's objections, Billy was appointed guardian of the person and estate of A.H. on August 12, 2014. Billy was ordered to not allow either parent to have personal contact with A.H. until they could prove that they had received intensive counseling and therapy and had completed an intensive parenting class. They were each given telephone visitation for five minutes on Sundays. Janice was granted unsupervised visitation for no more than six hours when she was in town. A FINS order filed August 19, 2014, reflects the same rulings.

Robyn and Janice filed a motion on September 2, 2014, asking that the trial court recuse, alleging bias, and requesting that venue be changed. The trial court denied the



motion by order filed September 30, 2014, finding that none of the parties were personally known to the court, that the court was not personally acquainted with any of the parties, that the court had a duty to fairly and without prejudice hear a case assigned to it, and that there was no reason for the court to recuse. This appeal timely followed.

## II. *Standard of Review*

Our appellate courts review guardianship proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Witham v. Beck*, 2013 Ark. App. 351, 428 S.W.3d 537. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. In cases involving children, we afford even more deference to the trial court's findings because our appellate courts have made it clear that there is no other case in which the superior position, ability, and opportunity of the trial judge to observe the parties carries a greater weight than one involving the custody of a child. *Wilson v. Wilson*, 2013 Ark. App. 759, 431 S.W.3d 369.

*Sherland v. Sherland*, 2015 Ark. App. 342, at 2–3, 465 S.W.3d 3, 6.

## III. *Constitutionality*

Combining appellants' first two points on appeal, we address both issues related to parental fitness and the application of *In re Guardianship of S.H.*, *supra*. Robyn and Janice contend that Robyn's constitutional rights were violated and that Arkansas law violates the United States Constitution. They contend that Robyn's parental rights have essentially been terminated because she was granted no access to her child. They argue that Robyn had not been found unfit, which is a violation of her rights as a parent in denying her appointment as guardian, citing *In re Guardianship of S.H.*, *supra*. And, relying on that case, they contend that, because Robyn had originally consented to the guardianship, she was entitled to terminate the guardianship when she objected to it because she had not been declared unfit. Robyn and

Janice argue that the facts were misinterpreted, not heard, or not considered. They claim that the circuit court erred in not hearing Robyn's case on termination before granting guardianship to a "non-parent abuser again."

Neither the argument regarding a fitness finding nor the question of constitutionality was raised before the circuit court. Therefore, we hold that appellant's first two points on appeal are not preserved. An appellant may not change the basis for his or her arguments or raise issues for the first time on appeal. *Cotton v. Robinson*, 2015 Ark. App. 451, at 3.

IV. *Motion to Recuse*

The Arkansas Supreme Court addressed the issue of a trial court's recusal by stating the law as follows:

> The Arkansas Constitution, Article 7, § 20, as well as the Arkansas Code of Judicial Conduct, Canon 3(c), provide that judges must refrain from presiding over cases in which they might be interested and must avoid all appearances of bias. *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998); *Matthews v. State*, 313 Ark. 327, 854 S.W.2d 339 (1993). However, a judge is not required to recuse because of his or her life experiences. *Reel v. State*, 318 Ark. 565, 886 S.W.2d 615 (1994). In addition, there exists a presumption of impartiality. *Turner v. State*, 325 Ark. 237, 926 S.W.2d 843 (1996). The decision to recuse is within the trial court's discretion, and it will not be reversed absent abuse. *Ayers, supra*; *Kail v. State*, 341 Ark. 89, 14 S.W.3d 878 (2000); *Gates v. State*, 338 Ark. 530, 2 S.W.3d 40 (1999). An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court, and the burden is on the party seeking to disqualify. To decide whether there has been an abuse of discretion, we review the record to see if prejudice or bias was exhibited. *Black v. Van Steenwyk*, 333 Ark. 629, 970 S.W.2d 280 (1998); *Dolphin v. Wilson*, 328 Ark. 1, 942 S.W.2d 815 (1997); *Reel, supra*.
>
> A trial judge's development of opinions, biases, or prejudices during a trial do not make the trial judge so biased as to require that he or she recuse from further proceedings in the case. *Noland v. Noland*, 326 Ark. 617, 932 S.W.2d 341 (1996); *Allen v. Kizer*, 294 Ark. 1, 740 S.W.2d 137 (1987). Absent some objective demonstration by the appellant of the trial judge's prejudice, it is the communication of bias by the trial judge which will cause us to reverse his or her refusal to recuse. *Noland, supra*;

*Matthews v. Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983). The mere fact of adverse rulings is not enough to demonstrate bias. *Gates*, [*supra*]. Whether a judge has become biased to the point that he should disqualify himself is a matter to be confined to the conscience of the judge. *Matthews*, *supra*; *Walker v. State*, 241 Ark. 300, 408 S.W.2d 905 (1966); *Narisi v. Narisi*, 229 Ark. 1059, 320 S.W.2d 757 (1959). The reason is that bias is a subjective matter peculiarly within the knowledge of the trial judge. *Id.*

*Irvin v. State*, 345 Ark. 541, 549–50, 49 S.W.3d 635, 640–41 (2001).

Robyn and Janice claim that Robyn's constitutional rights were violated by each order filed. Thus, they filed a motion for recusal and for change of venue. They argue that the trial court erred in not recusing because the judge showed bias and prejudice in favor of Billy and Kathy throughout her decisions and in ex parte orders.

In order to preserve a claim of judicial bias for review, appellant had to make a timely motion to the circuit court to recuse. Without such a motion, the disqualification of a judge may be waived. *Grunwald v. McCall*, 2014 Ark. App. 596, at 5, 446 S.W.3d 217, 221. The appellant in *Grunwald* presented several of what she claimed were examples of the trial court's bias against her throughout the proceedings. *Id.* at 6, 446 S.W.3d at 221. We noted that the appellant did not object to the trial court's actions when they occurred. *Id.* Her lack of objections, together with the fact that she did not seek recusal until after the trial court had granted the directed verdict, resulted in a waiver of the issue. *Id.* Here, Robyn and Janice's motion for recusal was filed September 2, 2014, complaining of the trial court's conduct on August 31, 2012, January 2013, and May 2013. Robyn and Janice alleged that the trial court showed bias in August 2012 by

> not allowing anything to be held against Billy Huskey regarding his actions or abuse
> on the child for years before June 11, 2013, because of the conspired fraudulent order
> but held against the mother the one incident filed against her January 25, 2011, by

Jeremy Huskey and Billy Huskey when all charges were dropped and dismissed January 28, 2011. Judge French knew this as of January 31, 2012, because Sandra Bradshaw reported they were in the hearing.

Thus, the motion to recuse was untimely and waived. As to the allegations of the trial court's bias in granting Billy guardianship "when [the trial court] knew he was unfit to have [the child]," we rely on *Irvin*, *supra*, and hold that the mere fact of an adverse ruling is not enough to demonstrate bias.

V. *July 29, 2014 Guardianship Order*

Robyn and Janice argue that their lawyer was refused access to the case files. Further, they argue that the trial court did not consider Billy's abusive actions prior to the order of June 11, 2013. They claim that the trial court erred in granting Billy unlimited, unsupervised visitation. Their brief alleges, "There was deceit and omission of evidence that the paternal grandparents were under Court ordered supervised visitation from August 31, 2012, hearing per Ark. Code Ann. § 9-19-209[.]"[2]

Appellants do not attempt to apply the cited code section to their argument. They claim that the guardianship order rests on an "invalid order because it had no petition . . . , was not served or copied to even the ad litem . . . or Janice Marie, Robyn Huskey or their attorney, yet Judge French stood on that order to grant guardianship." They cite no law for the argument other than requesting summary judgment and the standard whereby courts apply summary judgment. They further contend that Kathy and Billy should have lost

---

[2]Arkansas Code Annotated section 9-19-209(a) (Repl. 2009) provides that certain information must be submitted to the trial court in a child-custody proceeding, including the child's present address, places where the child has lived during the last five years, and the names and addresses of the persons with whom the child has lived during that period.

guardianship over the child "when Billy was found guilty of such horrific abuse to place him on supervised visitation."

In its statements made during the hearing held July 29, 2014, the trial court said,

Well, I found that [Billy] allowed contact by both parents when he was previously ordered not to, and I made his visitation, at that time, supervised. So this has already been tried and already been found.

Later in the same hearing, the trial court stated, "However, I did find Mr. Billy Huskey allowed the child to be around the parents when it was a court order that they not be around the parents." Accordingly, the "horrific abuse" that Robyn and Janice claim caused Billy's visitation to be supervised at least includes Billy's allowing A.H. to have contact with Robyn. Because no convincing arguments or appropriate citations to authority are presented, we do not consider the merits of this point on appeal. *Ark. Beverage Retailers Ass'n, Inc. v. Langley*, 2011 Ark. App. 259.

Affirmed.

HARRISON and GRUBER, JJ., agree.

*Robyn Huskey* and *Janice Marie*, pro se appellants.

No response.