JOSEPHINE LINKER HART, Associate Justice
This matter comes before us as an appeal from Jefferson County Circuit Court. Appellant, Alicia Morris, seeks reversal of the circuit court's March 10, 2017 order, which denied her motion to terminate a guardianship held by Jannelle Clark, who is Morris's niece, over J.M., who is Morris's minor child. The Arkansas Court of Appeals affirmed, and we then granted review. We vacate the opinion from the Arkansas Court of Appeals, and reverse and remand for an order consistent with this opinion.
I. Background
Before any pleadings or other documents related to this action were filed, on July 21, 2007, Morris signed what is titled a "Legal Document," that purported to confer a guardianship over J.M., an infant at the time, to either Collie Bland, who is Morris's sister, or Clark. Morris's statement in the document provides that she was presently "not stable," and that she that she believed Bland, her sister, was the one who would have guardianship over J.M. However, it is Clark's signature that appears on the line in the document for "adoptive parent."
On February 12, 2009, Clark filed a petition for guardianship over J.M., alleging that Morris had numerous criminal charges pending. On February 17, 2009, *368 the circuit court held a hearing and entered an emergency order appointing Clark as J.M.'s temporary guardian. On April 27, 2009, Morris filed a pro se response stating that she was not relinquishing her parental rights and stating that she only intended for Bland to be J.M.'s guardian, not Clark.
On May 11, 2009, the circuit court held a hearing on Clark's petition at which Clark appeared with counsel and Morris, who had a pending felony charge of second-degree battery, appeared pro se. At the hearing, Morris notified the circuit court that she was contesting the petition. The circuit court found that Clark was qualified and that it was in J.M.'s best interests that Clark be appointed as guardian. The court awarded Morris visitation every other weekend with the option to the mother and guardian to agree to additional visitation. The court did not make any explicit finding to the effect that Morris was unfit to parent.
A little over seven years later, on August 18, 2016, Morris filed a Motion for Emergency and Ex Parte Order for Temporary Custody, Motion for Permanent Change of Custody and to Terminate Guardianship, for Contempt and to Abate or Dismiss Petition for Child Support. Alicia alleged, inter alia, that the felonies had been nolle prossed, she had no pending felony charges, and that Clark had willfully denied visitation. Clark responded generally denying the allegations. The circuit court set the matter for hearing on October 26, 2016.
It would be fair to say that the circuit court was presented with "mixed facts" at the October 26, 2016 hearing. In its order, the circuit court made a number of findings that were either favorable to Morris or unfavorable to Clark. For example, the circuit court found that "[t]he natural mother showed that the conditions that made it necessary for this guardianship no longer exist. The felony charge was nolle prossed. It would appear that the natural mother's personal life is stable." The circuit court also found that Clark had moved the child to Tennessee without permission and had the child using the last name of Clark's then-boyfriend, a convicted felon, both of which "caused (the) circuit court great concern in continuing custody with the guardian." The circuit court also noted, "[t]his court did not find the natural mother to be unfit in its order of May 27, 2009."
However, the circuit court also made several findings that were either unfavorable to Morris or favorable to Clark. The circuit court found that "[t]he natural mother failed to exercise regular visitation with JM through no fault of the guardian." Furthermore, notwithstanding its aforementioned finding that Morris's "personal life is stable," the circuit court noted that "[f]rom the proof, this court concluded that the natural mother is experiencing residential instability." The circuit court also found that "[t]he relationship between the mother and child has been extremely limited for a long time through no fault of the guardian," and that "[t]he minor wishes to live with his guardian." Finally, the circuit court found that "[t]he guardian has shown that it is in the welfare and best interest of the child that this guardianship continues."
Ultimately, the circuit court denied Morris's petition to terminate the guardianship. This appeal followed.
II. Applicable Legal Authority
Our assessment of this matter begins with a natural parent's constitutional right to raise his or her child without undue interference from government. The Supreme Court of the United States addressed this issue in *369 Troxel v. Granville , 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In Troxel , Eight Justices agreed that the Fourteenth Amendment protects a parent's right to raise his or her child without undue interference from government. Five Justices agreed that a fit parent is accorded a presumption that the parent acts in the child's best interests. Four Justices agreed that "special factors" must "justify" the state's intrusion, and that one of those factors is a finding of parental unfitness. This court has specifically embraced the presumption that a fit parent acts in his or her child's best interests. Linder v. Linder , 348 Ark. 322, 72 S.W.3d 841 (2002).
Morris filed her petition to terminate the guardianship pursuant to Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2017) (the Termination Statute). The Termination Statute provides in relevant part as follows:
(b) A guardianship may be terminated by court order after such notice as the court may require:
...
(3) If, for any other reason, the guardianship is no longer necessary or for the best interest of the ward.
Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2017) (emphasis added). The Termination Statute's plain language contemplates that one can petition a circuit court to terminate an existing guardianship in either of two separate circumstances: when the guardianship is "no longer necessary" or when termination of the guardianship is "for the best interest of the ward." The Termination Statute's plain language also contemplates that the circuit court retains some level of discretion in these cases; i.e., the guardianship "may be terminated by court order" under either of the statute's two prongs. This court's construction of the Termination Statute has evolved in recent years as litigants have raised new arguments concerning this provision's proper interpretation and its place alongside United States Supreme Court jurisprudence.
In Graham v. Matheny , 2009 Ark. 481, 346 S.W.3d 273, this court held that one can petition to terminate an existing guardianship when either the guardianship is no longer necessary or termination is in the best interest of the ward, per the Termination Statute. However, this court added that when the ward is a minor child, "[w]hat is in the best interest of the child must always be examined," without regard for which "prong" of the statute the petitioner relies upon. 2009 Ark. 481, 14, 346 S.W.3d 273, 281 (overruled by Matter of Guardianship of W.L. , 2015 Ark. 289, 467 S.W.3d 129 ) (emphasis added).
Then, in In re Guardianship of S.H. , 2012 Ark. 245, 409 S.W.3d 307 ( In re S.H. I ), this court was presented with the issue of whether a fit parent who consented to a guardianship had the burden to prove, under Graham , both prongs of the statutory test in order for the court to terminate the guardianship. We reasoned that "parents who have not been found unfit do not relinquish their fundamental liberty interest in raising their children by consenting to a guardianship." 2012 Ark. 245, at 14, 409 S.W.3d at 316. Accordingly, we adopted a two-step, burden-shifting procedure for when a fit parent who consented to a guardianship later moves to terminate that guardianship:
A natural parent who has not been deemed unfit is entitled to the presumption that he or she is acting in the child's best interest, even after consenting to a guardianship. Therefore, when a natural parent, who has not been deemed unfit and who has consented to a guardianship, files a petition to terminate that guardianship, that parent must put forth evidence that the guardianship is no longer necessary. Once the court is satisfied *370 that the conditions necessitating the guardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child's best interest.
Id. at 15, 409 S.W.3d at 316. We remanded the case for the circuit court to reevaluate the case applying this procedure.
When that case returned to us after remand, we clarified the test in two ways. See In re Guardianship of S.H. , 2015 Ark. 75, 455 S.W.3d 313 ( In re S.H. II ). First, we said that a fit parent meets the burden of showing that a guardianship is "no longer necessary" under the statute simply by revoking consent to the guardianship. Id. at 14, 455 S.W.3d at 322. Second, we said that the guardian can rebut this presumption by proving best interests by clear and convincing evidence. Id.
Then in In re W.L. , 2015 Ark. 289, 467 S.W.3d 129, we did away with the burden-shifting/best interest analysis, overruling Graham and returning to the statute's plain language, which states that "a guardianship may be terminated by court order ... [i]f, for any other reason the guardianship is no longer necessary or for the best interest of the ward." Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2017) (emphasis added). In reaching that decision, this court was concerned with the friction between the burden-shifting/best interest analysis and the United States Supreme Court's holdings in Troxel :
Parents have a fundamental right to raise their children. We will not lightly intrude on this fundamental right. We have already said that a guardianship is no longer necessary once a fit parent revokes an earlier-given consent. This is because a fit parent is presumed to be acting in the child's best interest. By petitioning to terminate the guardianship and revoking consent, the fit parent, who has the child's best interest at heart, informs the court that the guardianship is no longer necessary. That is sufficient to meet the statutory requirement where the court "may" terminate the guardianship. In other words, a guardianship is no longer necessary "per the statute" when a fit parent revokes consent. The fit parent does not have to prove anything else. The statute does contain another method for the guardianship to be terminated, that is, by showing it is no longer in the ward's best interest. However, given that the legislature has created a disjunctive test, the parent can move to terminate under either prong.
This ruling is consistent with the statutory text and a fit parent's fundamental liberty interest in the care, control, and custody of his or her child. Furthermore, the burden of proof does not and cannot shift to the guardians when a guardianship is terminated based on a fit parent's revocation of consent. Simply put, a fit parent's decision regarding his or her children is conclusive. See Troxel, 530 U.S. at 68-69, 120 S.Ct. 2054 ("[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.").
2015 Ark. 289, at 6-8, 467 S.W.3d at 132-34. Additionally, in a footnote, the W.L. majority addressed a concern raised by the dissent; the dissent took issue with the majority's holding that "a fit parent's decision ... is conclusive," reasoning that this holding was inconsistent with the discretion afforded by the statute to a circuit court when determining whether to terminate a guardianship (See Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2017) ("A guardianship *371 may be terminated by court order ... if ... the guardianship is no longer necessary or for the best interest of the ward.") (emphasis added)). The majority wrote,
The dissent points out that the statute leaves the trial court with discretion even when the conditions necessitating guardianship no longer exist. This is a correct statement of the law; however, there were no other facts in front of the court that could overcome David's fundamental right to raise his child.
In re W.L. , 2015 Ark. 289, 15, 467 S.W.3d 129, 137 at n.6. Finally, this court most recently addressed the Termination Statute in Donley v. Donley , 2016 Ark. 243, 493 S.W.3d 762. There, this court cited favorably to the rationale set forth in W.L. , and then remanded "to the circuit court to enter an order applying the correct standard." Id. at 12, 493 S.W.3d at 769.
Acknowledging that our jurisprudence would benefit from further development on the Termination Statute analysis, we granted review in the present matter and now hold as follows.
A natural parent who has not been declared unfit is presumed to act in his or her own child's best interest. Troxel , supra. This presumption is applicable when such a parent seeks to terminate an existing guardianship over his or her minor child pursuant to the Termination Statute. In this situation, parent's petition to terminate the guardianship need only "inform the court that the guardianship is no longer necessary." W.L. , supra. This is an otherwise fit parent's only burden of proof; once that lack of necessity is communicated to the circuit court by a fit parent, the circuit court ordinarily would terminate the guardianship. W.L. , supra. The language contained in the Termination Statute does provide the circuit court some discretion in determining whether the guardianship should be terminated, but where the petitioner is a fit parent and the ward is the fit parent's minor child, the guardianship should only remain in place due to some circumstance "that could overcome (the petitioner's) fundamental right to raise (his or her) child." W.L. , supra.
We hold that a circuit court's determination that it would be in a minor ward's best interests for a guardianship to remain in place, standing alone, is insufficient to defeat a fit parent's substantive Due Process interest in raising his or her own child. There is a constitutional presumption that a fit parent acts in his or her child's best interests, so where the parent has not previously been found unfit, weighing "best interests" at the outset of the termination inquiry is inappropriate. The mere fact that a child may have more or better opportunities with another family cannot be enough to keep that child away from an otherwise fit parent.
None of this, however, should be construed to prohibit a guardian in such cases from actually raising and contesting the issue of the natural parent's "fitness" when the natural parent petitions to terminate the guardianship. Otherwise fit parents are presumed to be acting in their child's best interests, so the guardianship should only remain in place over the natural parent's wishes where the guardian defeats this presumption. To defeat this presumption, the guardian bears the burden of establishing that the natural parent is not fit. Importantly, whether a natural parent is "fit" is a very different question from whether it would be in a child's "best interest" to live with a natural parent or another family. Per the Troxel plurality, "fitness" asks whether a natural parent can "adequately care for his or her children." Troxel , supra. If the natural parent is found to be unfit, then the natural parent is not entitled to the constitutional *372 presumption discussed in Troxel and Linder , and the circuit court accordingly has greater discretion to determine whether to terminate the guardianship based upon the specific circumstances of a given case, including the best interests of the ward.[1] ,[2]
Accordingly, when a parent who has not previously been determined to be unfit petitions for termination of an existing guardianship over his or her minor child, circuit courts ordinarily should only decline to terminate the guardianship where the guardian contests the parent's fitness and establishes that the parent is presently unfit.[3] Where an otherwise fit natural parent seeks to terminate an existing guardianship and the scenario described above is not implicated, the circuit court should dispose of the guardianship routinely.
III. Application
Here, the circuit court's order denying Morris's petition indicates that the trial court followed the burden-shifting/best interest analysis that this court disposed of in W.L. The circuit court's order notes that while "[t]he natural mother showed that the conditions that made it necessary for this guardianship no longer exist," the guardianship should nonetheless continue because "[t]he guardian has shown that it is in the welfare and best interest of the child that this guardianship continues." Additionally, the circuit court's order states that it did not find Morris unfit in its prior order of May 27, 2009. The circuit court's order does not make any finding that Morris was unfit at the time of the October 26, 2017 termination hearing. Absent a finding of unfitness, then it was error for the circuit court to decline to terminate the guardianship by engaging in a best-interest analysis. As Morris argues, the Troxel plurality opined that some level of "special weight" must be afforded to a fit parent's preference as to what should happen to his or her child, and we agree with that proposition. Accordingly, we reverse and remand this matter to the circuit court for an order consistent with this opinion.
Reversed and remanded; Court of Appeals' opinion vacated.

By the terms of the statute, even where a parent petitioning to terminate an existing guardianship over his or her minor ward is found to be unfit, there could still be cause to terminate the guardianship if the parent establishes that termination would nonetheless be "for the best interests of the ward."

We are mindful that the Termination Statute now reads differently due to modifications implemented by the General Assembly in 2017. See Ark. Code Ann. § 28-65-401(b)(3). This opinion concerns the analysis of Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2017), which was the law at the time of the October 26, 2016 hearing.

As stated above, our decision in W.L. did not foreclose the possibility that some extraordinary circumstance could potentially overcome even a fit parent's constitutional right to parent his or her child. W.L. , 2015 Ark. 289, at 18 n.6, 467 S.W.3d at 138 n.6. It suffices to say that no such circumstance was demonstrated here.