SLIP OPINION



Cite as 2015 Ark. App. 496

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-15-93

| | | |
|---|---|---|
| TEMIKA DONLEY | | **Opinion Delivered** September 23, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60PR-13-620] |
| LAKITCHER DONLEY | | |
| | APPELLEE | HONORABLE MACKIE M. PIERCE, JUDGE |
| | | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Temika Donley appeals the Pulaski County Circuit Court's order denying her petition to terminate Lakitcher ("Kisha") Donley's guardianship over Temika's daughter, M.B. On appeal, Temika argues that the circuit court applied the wrong legal standard for termination-of-guardianship cases. Temika additionally argues that the circuit court erred in admitting Facebook screenshots that were not properly authenticated. We affirm.

M.B. was born to Temika in 2006. On April 9, 2012, Temika's sister, Kisha, petitioned for a guardianship of M.B in the Pulaski County Circuit Court. Kisha alleged that Temika had an abusive relationship with Donald Beasley and that Beasley had also become abusive toward M.B. On April 17, 2012, the circuit court held a hearing on the petition, and on May 1, 2012, the court entered an order granting temporary guardianship of M.B. to Kisha. In the order, the court stated that it found that Temika "is not fit and proper to

SLIP OPINION

provide for the safety and welfare of the minor child."

On July 2, 2012, the parties stipulated to Kisha having permanent guardianship over M.B. The order entered that day states that "the child in this case is in need of a guardian to protect her health and welfare."

On October 2, 2013, Temika filed a petition to terminate Kisha's guardianship. Temika alleged that she no longer had a relationship with Beasley and that she could now care for M.B. The circuit court held a bench trial on the petition on July 3, 2014.

At trial, Dr. Adam Benton, a licensed psychologist, testified about his counseling sessions with M.B. Dr. Benton stated that M.B. suffers from post traumatic stress disorder as a result of her exposure to the domestic abuse of Temika by Beasley. He said he treated M.B. with cognitive-behavioral therapy and that she has made great progress. Dr. Benton further testified that M.B. and Temika have a healthy relationship; however, he stressed that any future contact with Beasley or knowledge that Temika and Beasley were communicating would be detrimental to M.B.'s health.

Temika testified that she had not been in a relationship with Beasley since October 2012 and that, to her knowledge, Beasley lives in Chicago. She admitted that she still attends church where she and Beasley attended church together and that she saw Beasley in May 2014 at a church picnic but did not speak to him. She also admitted that Beasley had contacted her through Facebook in May and June 2013, but she blocked him after receiving the communication.

Temika testified that she graduated from Heritage College in May 2014 with a degree

in medical-assistant and x-ray technology. She stated that she received a certificate of academic excellence for maintaining all "A's" and "B's" in her courses. She noted that she was currently employed at the University of Arkansas for Medical Sciences but had been offered a new job at Arkansas Employee Benefits with employment benefits. She further noted she was leasing an apartment and had been living there for almost three years. She stated that M.B. has her own bedroom in the apartment and her own T.V. and computer.

Temika acknowledged that she consented to Kisha's guardianship of M.B. in 2012. She realized that M.B. should not be exposed to her abusive relationship with Beasley; however, she did not think the guardianship would be permanent. She also discussed an incident in which she and Kisha got into a disagreement over visitation and the police were called. She further noted other occasions when she and Kisha had disagreements over visitation through text messages.

On cross-examination, Kisha's counsel showed Temika screenshots of a Facebook account. The name on the Facebook account was "Meka Rochelle." Temika first denied that the account belonged to her but later admitted that the screenshots depicted her Facebook account. The screenshots showed that Beasley and Beasley's mother, Valerie Graves, had "liked" Temika's pictures.

Kisha's counsel then questioned Temika about photos of her that Graves had posted on Facebook. Temika stated that Graves had taken one photo at a high school graduation sometime in 2013. She stated that she went to the graduation to see a co-worker's brother graduate and that she ran into Graves. She testified that Beasley did not attend the graduation.

She also testified about a second photo that Graves posted of Temika. Temika stated that the photo was taken in December 2012.

Kisha's counsel then presented Temika with screenshots of Beasley's Facebook page. The screenshots showed photos of Beasley with several comments from "Meka Rochelle." Specifically, "Meka Rochelle" commented

> Oooooweee he's cute. Will you be my chocolate drop?
> . . . .
> Yea he cute. He had tha big head that day. Lol
> . . . .
> Okay let me stop. My boo cute!! Lol
> . . . .
> U must be bored? Still cute!!!

The comments were dated April 17, September 14, and October 5, 2013. Temika testified that she did not remember making the comments, and Temika's counsel objected to their authenticity. The court denied the objection and admitted the screenshots into evidence.

Kisha's counsel also introduced additional screenshots of Beasley's Facebook page with comments from "Meka Rochelle" dated October 25, 2013, and June 10, 2014:

> Hey hey hey y'all leave my baby alone!!! Gone boo and represent where u from!!! Lol
> . . . .
> Lol he ain't nothing but a flight away!!!! Y'all gone look up and say what she doing here. That's my hunnie bun. Lol I gots to stick up fa him
> . . . .
> Absolutely Beautiful. Love it!!

Temika denied making the comments and further suggested that Beasley used her Facebook page. She stated that he knew the password to her account. Temika's counsel again objected to the authenticity of the screenshots, and the court again denied the objection and admitted them into evidence. Kisha's counsel then introduced photos of Temika that Beasley had posted

on his Facebook page on October 11, 2013, and May 30, 2014. Temika stated that the photos depicted her, but she did not know why Beasley posted the photos and that she had no control over his account.

Kisha's counsel also questioned Temika about a comment from "Meka Rochelle" on Beasley's page dated June 7, 2014. Beasley posted that he was traveling to Chicago from Little Rock, and "Meka Rochelle" responded, "Boo, when are you coming home?" Temika admitted making the comment but stated that she made it only because she wanted to get M.B. back and she needed proof that Beasley did not live in Arkansas anymore.

Following Temika's testimony, Jayla Davis, a counselor at Women and Children First, testified about her counseling sessions with Temika. She explained that Women and Children First is a nonprofit domestic-violence shelter that provides education and emotional support to battered women. She testified that Temika solicited its services in December 2013. She stated that Temika wants to understand the dynamics of domestic violence and is highly motivated and determined to end her violent relationship with Beasley. She stated that Temika has made progress but noted "there is still work to be done." She testified that she and Temika discussed her June 7, 2014 comment on Beasley's Facebook page and that Temika expressed remorse for making the comment. Davis thought Temika acted courageously in admitting her mistake. She also thought Temika would continue to be successful in maintaining distance from Beasley if she kept her support system of family, friends, and counselors.

Next, Temika's friend, Jennifer Holloway, testified that Temika was not in a relationship with Beasley in June 2014. She noted that she and Temika had discussed her

relationship with Beasley and that she understood it was a "pretty bad relationship." She also stated that Temika reported to her that Beasley had used Temika's Facebook account. She further testified about an incident where Beasley commented on another man's Facebook account asking whether the man had a romantic relationship with Temika. She thought that Temika deleted her Facebook account or that Temika blocked Beasley.

Temika and Kisha's mother, Clarice Cooper, testified that in 2012, she thought Kisha's guardianship of M.B. was necessary, but she did not think it was necessary at the time of the hearing. She stated that she had not seen Temika with Beasley since 2012. She also discussed the altercation between Kisha and Temika when the police were called. She stated that the incident escalated because of an argument between her and Kisha, not Temika.

Following Cooper's testimony, Temika rested her case. Kisha then asked the court to dismiss Temika's petition to terminate the guardianship. She argued that Temika failed to show that termination of the guardianship was either in the best interest of M.B. or that the guardianship was no longer necessary. The court took the motion under advisement.

On July 16, 2014, the court issued a letter opinion stating that it planned to grant Kisha's directed-verdict motion. On July 17, 2014, Temika filed a motion for reconsideration of her petition to terminate the guardianship. On August 11, 2014, the court entered an order granting Kisha's directed-verdict motion and dismissing Temika's petition. The court found that Temika "failed to establish . . . by a preponderance of the evidence that the guardianship should be terminated." The court further noted that Temika "remains unsuitable for the

custody of [M.B.]" The court did not rule on Temika's motion for reconsideration. Temika then filed this timely appeal.

On appeal, Temika argues that the circuit court applied the wrong legal standard for termination-of-guardianship cases. Specifically, Temika asserts that she should have been afforded the presumption of a fit parent—that she acts in M.B.'s best interest and that the guardian, Kisha, should have had the burden to prove that termination is not in M.B.'s best interest. Temika further asserts that by applying the wrong legal standard, the court erred in granting Kisha's directed-verdict motion.

Temika's argument is misplaced. In its May 1, 2012 temporary-guardianship order, following a hearing on the merits, the circuit court found that Temika "is not fit and proper to provide for the safety and welfare of the minor child." Temika asserts that the fitness determination from the temporary-guardianship order is not applicable here because the court subsequently entered a permanent-guardianship order that did not mention Temika's fitness. We do not agree. The circuit court did not deem Temika a fit parent in the permanent-guardianship order. The parties stipulated to the permanent guardianship, and the court entered the order without a hearing. Further, in its August 2014 order dismissing Temika's petition to terminate the guardianship, the court found that Temika "remains unsuitable for the custody of [M.B.]" Thus, the record shows that the circuit court deemed Temika an unfit parent, and there is nothing in the record to show that the court changed that finding. Accordingly, the circuit court did not err in placing the burden of proof on Temika and granting Kisha's motion for a directed verdict.

SLIP OPINION

Temika next argues that the circuit court erred in admitting into evidence the screenshots of the comments "Meka Rochelle" made on Beasley's Facebook page and the photos of Temika that Beasley posted on his Facebook page. Temika asserts that the screenshots lacked authenticity because Temika did not claim ownership over the comments or photos. On appeal, we will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002). In evidentiary determinations, a trial court has wide discretion. *Id.*

Authentication of a document is a condition precedent to admissibility. *Id.*; Ark. R. Evid. 901 (2014). Authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Ark. R. Evid. 901(a). One acceptable method of authentication is the testimony of a witness with knowledge that a matter is what it is claimed to be. Ark. R. Evid. 901(b)(1). Another acceptable method is evidence of appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances. Ark. R. Evid. 901(b)(4). Our supreme court has held that text messages are properly authenticated when circumstantial evidence ties the party to the messages. *Gulley v. State*, 2012 Ark. 368, 423 S.W.3d 569; *see also Todd v. State*, 2012 Ark. App. 626, 425 S.W.3d 25.

Here, we hold that the circuit court did not abuse its discretion in admitting the screenshots of the comments and photos. Temika testified that "Meka Rochelle" was her Facebook account. She admitted authoring the June 7, 2014 comment on Beasley's Facebook account. She also testified that she was depicted in the photos on Beasley's account. This

testimony sufficiently ties her to the comments and the photos. Even though Temika did not remember making the comments, suggested that Beasley used her account to make the comments, and noted that she had no control over Beasley's account, her denials go to the weight to be given to the evidence, not admissibility. Accordingly, we hold that the circuit court did not abuse its discretion in admitting the Facebook screenshots.

Affirmed.

HARRISON and BROWN, JJ., agree.

*Dustin A. Duke* and *Margaret R. Ward*, Center for Arkansas Legal Services, for appellant.

*Robertson Law Firm, PLLC*, by: *Chris Oswalt*, for appellee.