SLIP OPINION

Cite as 2016 Ark. 243

# SUPREME COURT OF ARKANSAS

No. CV–15–824

| | |
|---|---|
| TEMIKA DONLEY <br><br> APPELLANT <br><br> V. <br><br> LAKITCHER DONLEY <br><br> APPELLEE | **Opinion Delivered** June 9, 2016 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60PR-12-620] <br><br> HONORABLE MACKIE M. PIERCE, JUDGE <br><br> <u>REVERSED AND REMANDED IN PART; AFFIRMED IN PART; COURT OF APPEALS' OPINION VACATED</u>. |

**KAREN R. BAKER, Associate Justice**

This appeal stems from a petition to terminate a permanent guardianship. Appellant, Temika Donley, and appellee, Lakitcher ("Kisha") Donley, are half sisters. Temika appeals the order of the Pulaski County Circuit Court denying her petition to terminate Kisha's guardianship over Temika's daughter, M.B.

## I. *Facts and Procedural History*

On April 9, 2012, Kisha filed a petition for temporary guardianship of M.B. and a motion for an expedited hearing. The parties allege that Temika was engaged in an abusive romantic relationship with Donald Beasley and that Beasley was emotionally and physically abusive to both Temika and M.B. On April 17, 2012, the circuit court conducted a hearing on the temporary guardianship. On May 1, 2012, the circuit court entered an order granting

SLIP OPINION

temporary guardianship of M.B. to Kisha, finding that Temika was not a fit parent and that Kisha was qualified to serve as guardian. On July 2, 2012, with Temika's consent, the court entered a permanent guardianship. In the circuit court's order, it is stated that the parties and their attorneys appeared on that day and that the parties "acknowledged their agreement to this action by way of their signature thereon." The order also states that "the child in this case is in need of a guardian to protect her health and welfare." The circuit court's order contained no finding of "unfitness." On October 2, 2013, Temika filed a petition to remove the guardianship contending that the guardianship was no longer necessary and revoking her consent.

On July 3, 2014, the circuit court conducted a hearing on the petition. At the hearing, Dr. Adam Benton, a licensed psychologist, testified about his counseling sessions with M.B. Dr. Benton testified that M.B. suffers from posttraumatic stress disorder as a result of her exposure to Beasley's domestic abuse of Temika. Dr. Benton testified that he treated MB with cognitive-behavioral therapy and said that she has made great progress and reduced her anxiety. Dr. Benton further testified that M.B. and Temika have a healthy relationship; however, he stressed that any future contact with Beasley or knowledge that Temika and Beasley were communicating would be detrimental to M.B. Dr. Benton stated that it would be best for M.B. if Beasley were not involved in their lives at all.

Temika testified that she believed that the guardianship was no longer necessary and that it was in M.B.'s best interest to be with her. Temika testified that she had not been in a relationship with Beasley since October 2012. Temika testified that she had completed online

courses from Heritage College and had obtained degrees in being a medical assistant and x-ray technology assistant. She further testified that was planning to obtain an LPN license. She had been working at UAMS and had just started a new job at Arkansas Employee Benefits where she would make more money and receive health benefits for her and M.B. Temika further testified that she had completed parenting classes and that she had started going to counseling the month after she had filed the petition to terminate the guardianship. Temika described instances in which Kisha had not been cooperative with her in communicating about M.B.'s activities and visitation. She also spoke of an incident that took place at her mother's house when Kisha had called the police. Temika was presently attending the same church that she and Beasley had attended while they were dating. She claimed that Beasley was in Chicago.

On cross-examination, Temika admitted that she had attended the graduation ceremony of Beasley's mother one month prior to this hearing. She had also attended a church picnic that Beasley had also attended. In addition, she was confronted with comments she made on Beasley's Facebook page, including the statements, "Oooooweee he's cute. Will you be my chocolate drop?"; "Yea he cute. He had tha big head that day. Lol"; "Okay let me stop. My boo cute!! Lol"; "U must be bored? Still cute!!!" These statements were dated April 17, September 14, and October 5, 2013, right before she filed the petition to terminate the guardianship. Kisha's counsel introduced additional screenshots of Beasley's Facebook page with comments from Temika dated October 25, 2013, and June 10, 2014:

> Hey hey hey y'all leave my baby alone!!! Gone boo and represent where u from!!! Lol";

Lol he ain't nothing but a flight away!!!! Y'all gone look up and say what she doing here. That's my hunnie bun. Lol I gots to stick up fa him

Absolutely Beautiful. Love it!!

Finally, on June 7, 2014, she wrote, "Boo, when are you coming home?" This comment was made after Beasley had posted on his Facebook page that he was traveling from Chicago to Little Rock. Temika claimed that she had since blocked Beasley from her Facebook page and did not use Facebook any longer.

Next, Jayla Davis, a counselor at Women and Children First, testified about her counseling sessions with Temika. She testified that Women and Children First is a nonprofit domestic-violence shelter that provides education and emotional support to battered women. She testified that after Temika had filed the petition to terminate the guardianship, Temika solicited its services in December 2013. Davis stated that Temika was highly motivated and determined to end her violent relationship with Beasley. She testified that Temika has made progress but noted "there is still work to be done." Davis testified that she and Temika discussed her June 7, 2014 comment on Beasley's Facebook page and that Temika expressed remorse for making the comment. Davis also testified that she thought Temika would continue to be successful in maintaining distance from Beasley if she kept her support system of family, friends, and counselors.

Temika's friend, Jennifer Holloway, testified that Temika was not in a relationship with Beasley in June 2014. She further testified that Temika reported to her that Beasley had used Temika's Facebook account. She also testified about an incident in which Beasley had posted a comment on another man's Facebook page asking whether the man had a romantic

relationship with Temika. She testified that she thought that Temika had deleted her Facebook account or that Temika had blocked Beasley.

Temika and Kisha's mother, Clarice Cooper, testified that in 2012, she believed Kisha's guardianship of M.B. was necessary, and she stated that she gave Kisha $24,000 for M.B.'s care. However, Cooper did not think the guardianship was still necessary at the time of the hearing. She stated that she had not seen Temika with Beasley since 2012. Cooper also discussed the altercation between Kisha and Temika when the police were called. She stated that the incident escalated because of an argument between her and Kisha, not Temika.

After Temika rested her case, Kisha moved for a directed verdict and asserted that Temika's petition to terminate the guardianship should be denied. She argued that Temika had failed to show that termination of the guardianship was either in the best interest of M.B. or that the guardianship was no longer necessary. The court took the motion under advisement.

On July 21, 2014, the circuit court issued a letter opinion. The court granted Kisha's motion for directed verdict, finding that the guardianship was still necessary and that termination of the guardianship was not in M.B.'s best interest. On August 11, 2014, the circuit court entered an order incorporating its findings. Temika timely appealed to the court of appeals, which affirmed. *Donley v. Donley*, 2015 Ark. App. 496, 470 S.W.3d 701. Temika petitioned this court for review, and on November 12, 2015, we granted the petition. When we grant a petition for review, we consider the appeal as though it had originally been filed in this court.

On appeal, Temika presents three points: (1) the circuit court applied the wrong legal standard for the termination proceeding because it incorrectly applied the findings of the temporary order to the permanent guardianship; (2) the circuit court erred in granting Kisha's motion for directed verdict; and (3) Facebook evidence is inadmissible for lack of authentication and its admission was not harmless error.

## II. *Standard of Review*

We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Graham v. Matheny*, 2009 Ark. 481, 346 S.W.3d 273. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses. *Id*.

## III. *Points of Appeal*

### A. Termination of Guardianship

For her first point on appeal, Temika asserts that the circuit court erred when it applied the wrong legal standard for the termination proceeding because it <u>applied</u> the findings of the temporary order to the permanent guardianship. Temika further contends that the circuit court erred because it did not take into consideration the fundamental liberty interest of Temika and did not afford Temika the presumption that, as a natural parent, she was a fit parent. Finally, Temika contends that the circuit court erred by placing the burden on Temika to prove that the guardianship was no longer necessary rather than affording her the

SLIP OPINION

fit-parent presumption and shifting the burden to Kisha.

We first turn to the issue of the fit-parent presumption because it is critical to our analysis. In *Troxel v. Granville*, 530 U.S. 57 (2000), the United States Supreme Court recognized a parent's fundamental liberty interest in the care, control, and custody of one's child, and in accordance, we have adopted the presumption that a fit parent acts in his or her child's best interest. *Linder v. Linder,* 348 Ark. 322, 72 S.W.3d 841 (2002). In *In Re Guardianship of W.L.*, 2015 Ark. 289, at 7–8, 467 S.W.3d 129, 133, we discussed natural-parent rights and the fit-parent presumption. We explained that "we will not lightly intrude on this fundamental right," and a fit parent may withdraw earlier consent to a permanent guardianship.

Here, on May 1, 2012, the circuit court entered the temporary guardianship finding that Temika was unfit:

> [Temika] is not fit and proper to provide for the safety and welfare of the minor child.
>
> Kisha should have and is hereby granted temporary guardianship of M.B.

Subsequent to the temporary order, on July 2, 2012, the parties agreed to a guardianship, and the circuit court entered a permanent guardianship to that effect. Absent from the July 2, 2012 order is a finding of unfitness. When the permanent guardianship was entered, the parties consented to the guardianship, and no finding was made. Further, the temporary-guardianship order and its findings, including the finding of unfitness, expired upon entry of the permanent guardianship. *See* Ark. Code Ann. § 28-65-218 (2)(A) (Repl. 2012) ("If the incapacitated person is a minor, the initial period for the appointment of a temporary

guardian shall be for a period not to exceed ninety (90) days."); *See also Kirk v. N. Little Rock Special Sch. Dist.*, 174 Ark. 943, 298 S.W. 212, 213 (1927)(citations omitted) ("It is the duty of the courts to decide actual controversies by a judgment or decree which can be carried into effect, but not to give opinions upon controversies or declare principles of law which cannot be executed or which cannot have any practical effect in settling the rights of the litigants under the judgment or decree rendered.) Here, because the temporary order was simply that, temporary, it expired and was superseded by the entry of the permanent order, and from July 2, 2012, forward, the fit-parent presumption applied. Accordingly, based on the record before us, the circuit erred by not affording Temika the fit-parent presumption.

Having established that as of July 2, 2012, Temika was a fit parent, we next turn to the order at issue and its findings regarding the guardianship. At the crux of this case is the court's August 11, 2014 order, which states in pertinent part,

> [Temika] has failed to establish in her case in chief, by a preponderance of the evidence, that the guardianship should be terminated. . . . This Court finds that the guardianship for [M.B.] is still necessary, *and* it is not in her best interests that the guardianship be terminated at this time.

With regard to termination of guardianships, Ark. Code Ann. § 28-65-401(b)(3) provides that

> (b) A guardianship may be terminated by court order after such notice as the court may require:
> . . .
> > (3) If, for any other reason, the guardianship is no longer necessary *or* for the best interest of the ward.

(Emphasis added.)

In *In re Guardianship of W.L.*, 2015 Ark. 289, 467 S.W.3d 129, we interpreted this

SLIP OPINION

statute and clarified this court's holdings with regard to the termination of guardianships:

> Termination-of-guardianship cases have been in a recent state of flux. We tried to bring some sense to this area of the law in *Graham v. Matheny*. However, while the Graham court acknowledged that termination-of-guardianship cases were governed by a disjunctive statute, it noted that if the ward is a child, the circuit court must still consider best interest, which has the effect of turning the test into a conjunctive one—the *or* becomes an *and*. 2009 Ark. 481, at 14–15, 346 S.W.3d 273, 281.

We attempted to clarify the guardianship analysis in *In re Guardianship of S.H. (1)*, 2012 Ark. 245, 409 S.W.3d 307 (*In re S.H. (1)*). There, we recognized and reaffirmed a fit parent's "fundamental liberty interest in the care, control, and custody of her child." 2012 Ark. 245, at 8–9, 409 S.W.3d at 313. The United States Supreme Court acknowledged this principle in *Troxel v. Granville*, 530 U.S. 57 (2000), and in accordance we have adopted a presumption that a fit parent acts in his or her child's best interest. *See, e.g.*, *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002).

The issue in *In re S.H. (1)* was whether a fit parent who consented to a guardianship had the burden to prove, under *Graham*, both prongs of the statutory test in order for the court to terminate the guardianship. We reasoned that "parents who have not been found unfit do not relinquish their fundamental liberty interest in raising their children by consenting to a guardianship." 2012 Ark. 245, at 14, 409 S.W.3d at 316. Accordingly, we adopted a two-step, burden-shifting procedure when a fit parent who consented to a guardianship later moves to terminate that guardianship:

> A natural parent who has not been deemed unfit is entitled to the presumption that he or she is acting in the child's best interest, even after consenting to a guardianship. Therefore, when a natural parent, who has not been deemed unfit and who has consented to a guardianship, files a petition to terminate that guardianship, that parent must put forth evidence that the guardianship is no longer necessary. Once the court is satisfied that the conditions necessitating the guardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child's best interest.

*Id*. at 15, 409 S.W.3d at 316. We remanded the case for the circuit court to reevaluate the case applying this procedure.

When that case returned to us after remand, we clarified the test in two ways. *See In re Guardianship of S.H.(2)*, 2015 Ark. 75, 455 S.W.3d 313 ("*In re S.H. (2)*"). First, we said that a fit parent meets the burden that a guardianship is no longer necessary under the statute by revoking consent. *Id*. at 14, 455 S.W.3d at 322. Second, we said that the guardians can rebut this presumption by proving best interest by clear

SLIP OPINION

and convincing evidence. *Id.* We noted that this conjunctive burden-shifting test was inconsistent with the disjunctive statute, but nevertheless ruled that we were bound by the law-of-the-case doctrine. Ultimately, we reversed the circuit court's order keeping the guardianship in place and ordered the court to return the child to her mother, who was fit.

We are not bound by law of the case here and can return to the statute's plain language, which states that "a guardianship may be terminated by court order . . . [i]f, for any other reason the guardianship is no longer necessary or for the best interest of the ward." Ark. Code Ann.§ 28-65-401(b)(3). Parents have a fundamental right to raise their children. We will not lightly intrude on this fundamental right. We have already said that a guardianship is no longer necessary once a fit parent revokes an earlier-given consent. This is because a fit parent is presumed to be acting in the child's best interest. By petitioning to terminate the guardianship and revoking consent, the fit parent, who has the child's best interest at heart, informs the court that the guardianship is no longer necessary. That is sufficient to meet the statutory requirement where the court "may" terminate the guardianship. In other words, a guardianship is no longer necessary "per the statute" when a fit parent revokes consent. The fit parent does not have to prove anything else. The statute does contain another method for the guardianship to be terminated, that is, by showing it is no longer in the ward's best interest. However, given that the legislature has created a disjunctive test, the parent can move to terminate under either prong.

This ruling is consistent with the statutory text and a fit parent's fundamental liberty interest in the care, control, and custody of his or her child. Furthermore, the burden of proof does not and cannot shift to the guardians when a guardianship is terminated based on a fit parent's revocation of consent. Simply put, a fit parent's decision regarding his or her children is conclusive. *See Troxel*, 530 U.S. at 68–69, 120 S.Ct. 2054 ("[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.").

*In re W.L.*, 2015 Ark. 289, at 6–8, 467 S.W.3d at 132–34.

Accordingly, Ark. Code Ann. § 28-65-401(b)(3) plainly states that the method to terminate a guardianship is disjunctive: A guardianship may be terminated by court order if the guardianship is no longer necessary *or* for the best interest of the ward. Here, however, the circuit court applied the two methods in a conjunctive manner that required Temika to

SLIP OPINION

meet both methods as if both were requirements to terminate the guardianship.  In its August

11, 2014 order, the circuit court stated as follows:

> [Temika] has failed to establish in her case in chief, by a preponderance of the evidence, that the guardianship should be terminated. . . . This Court finds that the guardianship for [M.B.] is still necessary, *and* it is not in her best interests that the guardianship be terminated at this time.

(Emphasis added.)

This finding is an incorrect application of the law.  The circuit court failed to follow

the plain language of the statute.  As we explained in *In Re W.L.*, the conjunctive standard

is not the standard under Ark. Code Ann. § 28-65-401.  Although the circuit court did not

have the benefit of our opinion in *In Re W.L.*, it is certainly applicable to this situation.

Based on our holding in *In Re W.L.*, here, at the entry of the circuit court's August 11, 2014

order, Temika was a fit parent, revoked her consent to the guardianship,  and the burden

shifted to Kisha to demonstrate that the guardianship was still necessary or in M.B.'s best

interest.  Stated differently, when Temika revoked her consent, the statute was triggered, the

presumption applied and the burden shifted to Kisha.  Therefore, we agree with Temika that

the circuit court erred on this first point and reverse and remand this matter to the circuit

court to apply the correct legal standard.  Although we reverse the circuit court on this point,

we offer no opinion as to whether the evidence presented at the termination hearing was

sufficient to meet Kisha's burden to establish that the guardianship should not be terminated;

rather, we remand for the circuit court to make that determination using the correct legal

standard.

Cite as 2016 Ark. 243

B. Motion for Directed Verdict

For her second point on appeal, Temika asserts that the circuit court erred by granting Kisha's motion for directed verdict. Temika contends that the circuit court erred because she was not given the fit-parent presumption despite having revoked her consent to the guardianship. Temika's argument here is the same as addressed in her first point. Based on our discussion above, we agree with Temika and hold that the circuit court erred on this point. We reverse and remand this matter to the circuit court to enter an order applying the correct standard.

C. Alleged Evidentiary Error

For her final point on appeal, Temika contends that the circuit court erred by admitting the evidence from Facebook, screenshots made by "Meka Rochelle," on Beasley's Facebook page, and photos of Temika that Beasley posted on his Facebook page. Temika asserts that the evidence should have been excluded because the posts and comments were not authenticated. Temika contends that the evidence was not admissible in light of her testimony that she did not remember making some of the comments, her suggestion that Beasley might have used her account to make the comments, and her testimony that she had no control over Beasley's account.

On appeal, we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). In evidentiary determinations, a trial court has wide discretion. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002).

With regard to authentication of a document, authentication of a document is a condition precedent to admissibility and is governed by Rule 901 of the Arkansas Rules of Evidence. Authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Ark. R. Evid. 901(a). Pursuant to Rule 901, acceptable methods of authentication include the following:

> (b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> (1) Testimony of Witness With Knowledge. Testimony of a witness with knowledge that a matter is what it is claimed to be.
>
> . . . .
>
> (4) Distinctive Characteristics and the Like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances. The requirements of authentication and identification under Rule 901 are satisfied

when the circuit court in its discretion is satisfied that the physical evidence presented is genuine and in reasonable probability has not been tampered with. *Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767 (2001). Further, we have held that text messages are properly authenticated when circumstantial evidence ties the party to the messages. *Gulley v. State*, 2012 Ark. 368, at 15, 423 S.W.3d 569, 579.

Here, Temika testified that "Meka Rochelle" was the name on her Facebook account, and all the comments were made under that name. She identified the photographs contained on the Facebook pages as photos of her, and she testified that she posted the comment on Beasley's Facebook page on June 7, 2014. Under these facts, we cannot say that the circuit court abused its discretion in admitting the screenshots into evidence. We do not find error

on this point and affirm the circuit court.

    Reversed and remanded in part; affirmed in part; court of appeals' opinion vacated.

    Special Justice DEBBY LINTON FERGUSON joins in this opinion.

    BRILL, C.J., and DANIELSON and WOOD, JJ., concur in part and dissent in part.

    WYNNE, J., not participating.

    **HOWARD W. BRILL, Chief Justice, dissenting.** I concur with the majority's conclusion that the circuit court did not abuse its discretion in admitting the Facebook screenshots. However, I respectfully dissent from the majority's decision to reverse the circuit court's order and remand for further proceedings. I would affirm the circuit court's order denying Temika's petition to terminate guardianship.

    In my view, because Temika had been deemed unfit, the circuit court did not err in placing the burden of proof on her to establish the grounds for termination of a guardianship under Arkansas Code Annotated section 28-65-401(b)(3) (Repl. 2012). The circuit court found Temika unfit on May 1, 2012. Having conducted a de novo review of the record, I find that Temika remained unfit at the time the permanent-guardianship order was entered in June 2012.

    First, Temika admitted at the termination hearing that she continued her relationship with Beasley until October 2012. That relationship formed the basis for the finding at the temporary hearing that Temika was unfit. Because that relationship continued, the unfitness continued.

Second, the language in the permanent order of June 2012 itself indicates she was not a fit parent. The permanent order imposed a number of requirements on Temika, demonstrating that her parenting ability remained inadequate. For example, the court ordered Temika to continue therapy and parenting classes until released by the therapist and to seek family therapy with M.B.

Third, the permanent order stated that M.B. needed a guardian to protect her health and welfare. There could be no other reason for this finding except for Temika's failure to protect her daughter, which a fit parent would be able to do. Because she was an unfit parent when the permanent order was entered, she was not entitled to the *Troxel* fit-parent presumption[1] when she filed the petition to terminate the guardianship in 2014. At no point between the May 2012 hearing and the August 2014 order did the circuit court ever find that Temika was a fit parent. Although the exact word "unfit" was not in the permanent order, the logical reading of that order, entered only two months after the temporary order, was that she continued to be unfit.

In addition, although I agree with the majority about the legal standard to be applied to the termination of a guardianship, my reading of the circuit court's order leads me to the conclusion that the circuit court properly applied that standard for guardianship termination. Once established, a guardianship may be terminated by court order after such notice as the court may require if the guardianship is no longer necessary *or* for the best interest of the child.

---

[1] *See generally* Andy Taylor, *The Arkansas Supreme Court Clarifies the Standard for Terminating Consensual Guardianships of Minors*, 51 Ark. Law. 40 (2016).

*See* Ark. Code Ann. § 28-65-401(b)(3) (emphasis added). The requirements listed in the statute are disjunctive, or alternative, rather than conjunctive. *See In re W.L.*, 2015 Ark. 289, at 8, 467 S.W.3d 129, 134 ("[G]iven that the legislature has created a disjunctive test, the parent can move to terminate under either prong.").

Here, the circuit court found that "the guardianship for [M.B.] is still necessary, *and* it is not in her best interests that the guardianship be terminated at this time." (Emphasis added.) In my view, the circuit court's use of "and" does not mean that the circuit court applied the test conjunctively and required Temika to satisfy both prongs of the statute. Rather, the circuit court found that Temika satisfied neither the "no longer necessary prong" nor the "best interest" prong.

Finally, it is important to note that the statute uses the verb "may." The circuit court, having heard the testimony of the sisters in this case and having considered the other evidence, retains the discretion to continue the guardianship. *See, e.g.*, *Hopper v. Garner*, 328 Ark. 516, 944 S.W.2d 540 (1997) (explaining that the use of the word "may" instead of "shall" indicates that the statute is permissive or discretionary rather than mandatory). For these reasons, I would affirm the circuit court's decision.

DANIELSON and WOOD, JJ., join.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Abtin Mehdizadegan*; and *Dustin A. Duke*, Center for Arkansas Legal Services, for appellant.

*Robertson Law Firm, PLLC*, by: *Chris Oswalt*, for appellee.