KENNETH S. HIXSON, Judge
Appellant Alicia Michelle Morris is the biological mother of her son, J.M., who was born on April 24, 2007. On May 27, 2009, an order of permanent guardianship was entered appointing appellee Jannelle Marie Clark as J.M.'s guardian. On August 18, 2016, Alicia filed a motion to terminate the guardianship and for J.M. to be placed in her custody. On March 10, 2017, the trial court entered an order denying Alicia's petition.[1]
Alicia now appeals from the trial court's order denying her petition to terminate the guardianship. For reversal, Alicia argues that the trial court misapplied the applicable guardianship statute, Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2012), and *193 that the trial court erred in failing to give weight to her fundamental right to the care, custody, and control of her child. We affirm.
We review probate proceedings de novo, but we will not reverse a finding of fact by the trial court unless it is clearly erroneous. Graham v. Matheny , 2009 Ark. 481, 346 S.W.3d 273. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. Id. We, however, give no deference to the trial court with respect to matters of law. Stautzenberger v. Stautzenberger , 2013 Ark. 148, 427 S.W.3d 17.
The pertinent facts and procedural history are as follows. On July 21, 2007, when J.M. was almost three months old, Alicia signed a nonbinding document consenting to place the child in the custody of Jannelle, who is the child's cousin. Thereafter, J.M. resided in Pine Bluff with Jannelle and Jannelle's mother (Alicia's half-sister). Jannelle became the child's primary caregiver.
On February 17, 2009, Jannelle filed a petition to be appointed J.M.'s guardian. In the petition Jannelle alleged that she had been providing for and caring for the child; that Alicia had not visited or provided support for the child; and that Alicia had criminal charges pending against her. Alicia filed a response, contesting Jannelle's petition. After a hearing, the trial court, on May 27, 2009, entered an order appointing Jannelle as J.M.'s permanent guardian subject to Alicia's reasonable visitation. For the next several years, J.M. remained in Jannelle's custody in Pine Bluff.
Seven years later, on August 18, 2016, Alicia filed a petition to terminate the guardianship. In the petition, Alicia alleged that the prior criminal charges against her had been nolle prossed. Alicia further alleged that she lived in a suitable home in West Memphis raising her two older children, that she was gainfully employed, and that she was a fit parent. The petition also stated that Jannelle had not abided by the visitation order and had only allowed her only sporadic visitation with J.M. The petition further stated that, about a month earlier, Jannelle was homeless and had temporarily moved into Alicia's home with J.M. Finally, Alicia alleged that she and J.M. had bonded and established a strong parent-child relationship, and also that J.M. was bonded with his two older siblings. Jannelle filed a response, requesting that Alicia's petition to terminate the guardianship be denied. The trial court subsequently held a hearing on the petition.
Alicia testified that she lives with her two older sons and her boyfriend in West Memphis. Alicia stated that J.M. previously needed a guardian due to Alicia's criminal charges, but that the charges had been dropped and she had been in no further criminal trouble. Alicia stated that she is now stable, her life is in order, and she has full-time employment. Alicia stated that she had tried to visit her child regularly but that Janelle had denied her visitation. As a result, Alicia had only visited J.M. about ten times. Alicia testified that she wanted to be a mother to J.M., and asked that the guardianship be terminated.
In support of her position that the guardianship should remain in force, Jannelle testified that she and J.M. had lived in Pine Bluff for several years, but that she had recently brought J.M. to West Memphis in an attempt to foster a relationship between J.M. and Alicia and the child's siblings. Jannelle denied ever being homeless, and stated that, after temporarily staying with Alicia, she and J.M. moved *194 to a place in Memphis. Jannelle works in a nursing home in Memphis, and also works part-time every other weekend in Pine Bluff. When Jannelle works in Pine Bluff, she takes J.M. to stay with Jannelle's mother. Jannelle acknowledged that she had changed J.M.'s last name to that of Jannelle's ex-boyfriend, who had since gone to prison and been recently paroled. Jannelle denied withholding Alicia visitation with J.M., stating that she had no objection to Alicia visiting the child. However, Jannelle testified she wanted to remain J.M.'s guardian.
J.M., who is now ten years of age, also testified. J.M. stated that he loves his mother, Alicia, as well as his older brothers. However, J.M. stated that he wanted to continue living with Jannelle and have visitation with Alicia.
On March 10, 2017, the trial court entered an order denying Alicia's petition to terminate the guardianship. In the trial court's order, it made the following pertinent findings and conclusions:
1. The natural mother showed that the conditions that made it necessary for this guardianship no longer exist. The felony charge was nolle prossed. It would appear that the natural mother's personal life is stable. From the proof, this court concluded that the natural mother is experiencing residential instability.
2. The guardian has shown that it is in the welfare and best interest of the child that this guardianship continues. This child has had very little contact with his natural mother from the time he was three months old until now. The child is adjusted after being in the care of this guardian. Moreover, the child wishes to remain in the custody of the guardian.
On appeal from the order denying her motion to terminate the guardianship, Alicia argues that the trial court misapplied the applicable guardianship statute, and that proper weight was not given to her fundamental rights as the biological parent.
Guardianships are special proceedings that are governed by statute. Hetman v. Schwade , 2009 Ark. 302, 317 S.W.3d 559. Under the guardianship statute, a guardianship may be terminated if "the guardianship is no longer necessary or for the best interest of the ward." Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2012).[2]
The cases interpreting the termination-of-guardianship statute have been in, and apparently continue to be in, a state of flux and ongoing clarifications. The pertinent line of supreme court cases began with Graham v. Matheny , 2009 Ark. 481, 346 S.W.3d 273, and was followed by In re Guardianship of S.H. (1) , 2012 Ark. 245, 409 S.W.3d 307, and In re Guardianship of S.H. (2) , 2015 Ark. 75, 455 S.W.3d 313. Finally, in 2015, in what appeared to be a significant departure from the historical interpretation of the statute, the supreme court delivered In Re Guardianship of W.L. , 2015 Ark. 289, 467 S.W.3d 129.
In In re W.L. , our supreme court gave a somewhat reformed interpretation to the guardianship-termination statute in a case involving a fit parent, and stated that, to the extent Graham , In re S.H. (1) , and In re S.H. (2) were in conflict with its decision, they were overruled. In In re W.L. , the supreme court pointedly discussed a parent's fundamental right to raise his or *195 her children and the history and the disjunctive nature of the guardianship-termination statute, and stated:
We have already said that a guardianship is no longer necessary once a fit parent revokes an earlier-given consent. This is because a fit parent is presumed to
be acting in the child's best interest. By petitioning to terminate the guardianship and revoking consent, the fit parent, who has the child's best interest at heart, informs the court that the guardianship is no longer necessary. That is sufficient to meet the statutory requirement where the court "may" terminate the guardianship. In other words, a guardianship is no longer necessary-per the statute-when a fit parent revokes consent. The fit parent does not have to prove anything else. The statute does contain another method for the guardianship to be terminated, that is, by showing it is no longer in the ward's best interest. However, given that the legislature has created a disjunctive test, the parent can move to terminate under either prong.
This ruling is consistent with the statutory text and a fit parent's fundamental liberty interest in the care, control, and custody of his or her child. Furthermore, the burden of proof does not and cannot shift to the guardians when a guardianship is terminated based on a fit parent's revocation of consent. Simply put, a fit parent's decision regarding his or her children is conclusive.
In re W.L. , 2015 Ark. 289, at 7-8, 467 S.W.3d at 133-34 (emphasis added). Hence, In re W.L. appeared to be the clarification of the guardianship-termination statute.
However, only one year after In re W.L. was delivered, the supreme court again reentered the guardianship-termination statute-interpretation fray and delivered Donley v. Donley , 2016 Ark. 243, 493 S.W.3d 762. While the supreme court did not overrule In re W.L ., the Donley court did significantly clarify the holding of In re W.L . The circumstances of Donley were similar to those in In re W.L. in that a fit parent revoked consent and petitioned to have the guardianship terminated.[3] In Donley , the trial court found that, despite the fact that a fit mother revoked her consent (which should have entitled her to the fit-parent presumption), the fit mother failed to establish her case-in-chief that the guardianship should be terminated. The trial court further found that the guardianship was still necessary and that it was not in the child's best interest to terminate the guardianship. The trial court, therefore, denied the petition to terminate the guardianship. However, the supreme court in Donley held that the trial court had incorrectly applied the law by failing to apply the fit-parent presumption and reversed. In discussing the fit-parent presumption, the Donley supreme court wrote:
Based on our holding in In re W.L. , here, ... [the mother] was a fit parent, revoked her consent to the guardianship, and the burden shifted to [the guardian] to demonstrate that the guardianship was still necessary or in [the child's] best interest. Stated differently, when [the mother] revoked her consent, the statute was triggered, the presumption *196 applied and the burden shifted to [the guardian].
Donley , 2016 Ark. 243, at 11, 493 S.W.3d at 769 (emphasis added). While the Donley opinion's language with respect to the "burden shifting" to the guardian may appear to conflict with In re W.L ., the above-cited "burden-shifting" language in Donley is the latest pronouncement on the guardianship-termination interpretation issued by our supreme court and, hence, is the controlling precedent.
Both below and on appeal, Alicia relied on In re W.L. Alicia's reliance on In re W.L . is misplaced. Alicia argued that based on our supreme court's holding in In re W.L. , that where a fit parent revokes her consent to the guardianship, a fit parent's decision regarding his or her children is conclusive and, therefore, the guardianship is no longer necessary. Ergo, according to Alicia, because the statutory language is disjunctive, the guardianship should be terminated. While that argument may have been dispositive under In re W.L. , that argument is no longer dispositive, and our analysis must be guided by our supreme court's later holding in Donley , as this reflects its most recent interpretation of the guardianship-termination statute and how it must be applied.
Turning to the facts of the present case, Alicia was never found by the trial court to be an unfit parent. In fact, in the March 10, 2017 order denying Alicia's petition to terminate the guardianship, the trial court specifically stated that the trial court did not find the natural mother to be unfit in its previous May 27, 2009 order appointing Jannelle as J.M.'s permanent guardian. Nor did the trial court make any finding of unfitness in the March 10, 2017 order.
Applying our supreme court's most recent holding in Donley , Alicia, as a fit parent, was presumed to be acting in J.M.'s best interest when she petitioned to terminate the guardianship. By petitioning the trial court for termination of the guardianship, Alicia was informing the court that the guardianship was no longer necessary. Per Donley , when Alicia, a fit parent, petitioned to terminate the guardianship, Alicia was entitled to the fit-parent presumption and the burden then shifted to Jannelle, the guardian, to demonstrate that the guardianship was still necessary or that the guardianship was in J.M.'s best interest.
In this case, the trial court found that Alicia had shown that the conditions that made it necessary for the guardianship no longer existed, stating that the criminal charges against her had been dropped and that her personal life appeared to be stable. While the trial court did not use the phrase "fit-parent presumption" in its order, it does appear that the trial court applied the fit-parent presumption and proceeded to allow the burden to shift to the guardian, Janelle, to prove that the guardianship was still necessary or that it was in the best interest of the ward as required by Donley . The trial court made the following conclusions: "2. The guardian has shown it is in the welfare and best interest of the child that the guardianship continues. " The trial court, thereafter, dismissed the appellant's petition to terminate the guardianship. In reaching these conclusions, the trial court relied on the evidence that J.M. had very little contact with his natural mother from the time he was three months old, that J.M. was well adjusted after being in Jannelle's care, and that J.M. wished to remain in Jannelle's custody. In so doing, the trial court effectively applied the burden-shifting standard announced by our supreme court in Donley , and found that the guardian had met her burden of proving that continuing the guardianship was still in J.M.'s best interest. We conclude on this record that the trial court did not clearly err in finding *197 that Jannelle met her burden of showing that the guardianship was in J.M.'s best interest, and therefore we affirm the trial court's order denying Alicia's petition.
Finally, we observe that, although it is not listed as a separate point on appeal, Alicia also cites in her brief Ark. Code Ann. § 28-65-401(b)(2), which provides that "[a] guardianship may be terminated by court order after such notice as the court may require [i]f the ward becomes a nonresident of this state." However, Alicia did not argue in either her petition to terminate the guardianship or in her posttrial brief to the trial court that the guardianship should be terminated because J.M. was no longer a resident of this state, nor did the trial court make a finding on the issue in its order denying Jannelle's petition.
Therefore, we need not address the allegation that J.M. had become a nonresident or that the guardianship should have terminated on that ground.
Affirmed.
Abramson and Vaught, JJ., agree.

Alicia subsequently filed a motion for reconsideration, which was denied.

This was the guardianship statute in effect when the trial court entered the order being appealed. The statute has since been amended to replace "or" with "and," see Ark. Code Ann. § 28-65-401(b)(3) (Supp. 2017), but the amended version of the statute is not applicable here.

Although the trial court in Donley had found the mother to be unfit, the supreme court reversed that finding, stating that although the mother had been found to be unfit in a temporary guardianship order, that order expired upon entry of the permanent guardianship, wherein the trial court made no finding of parental unfitness. The supreme court held that because the temporary order expired and was superseded by entry of the permanent order, from the time the permanent order was entered the fit-parent presumption applied.